# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:01-CR-296 RLW |
| | ) | |
| KENNETH COLEMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This closed criminal case is before the Court on Defendant Kenneth Coleman's pro se "1B1.13(b)(6) Reduction in Term of Imprisonment Under 18 USC 3582(c)(1)(a) Motion for Compassionate Release" (ECF No. 404). Coleman's motion was supplemented by appointed counsel seeking a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i) and United States Sentencing Guidelines § 1B1.13(B)(6) (ECF No. 410).[1]

The motions seek to reduce Coleman's sentence under § 1B1.13(b)(6), which applies to defendants who received an "unusually long" sentence, have served at least ten years of the term of imprisonment, and identify a non-retroactive change in the law that produces a "gross disparity between the length of the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(6). Coleman asserts that because the First Step Act of 2018 limited prosecutors' ability to "stack" multiple counts under 18 U.S.C. § 924(c) as part of the same case, a sentence he would receive today would be at least eighteen years shorter than the 709-month sentence he received in 2002.

---

[1] Coleman's jury trial was presided over and he was sentenced by the Honorable E. Richard Webber. The case was transferred to this Court after Judge Webber's retirement.

Coleman also asserts that the 18 U.S.C. § 3553(a) factors support a sentence reduction. Coleman points to his documented progress toward rehabilitation, as evidenced by a spotless disciplinary record during his incarceration in the Bureau of Prisons; completion of an accredited apprenticeship program for machinists that required 8,000 hours of on-the-job training; completion of numerous BOP rehabilitative programs and classes, including ten years as a suicide companion; his minimum recidivism and violent recidivism risks; strong family support and a solid release plan; and sincere remorse and personal growth.

The Government opposes Coleman's motion. Its main argument is that Eighth Circuit precedent forecloses Coleman's claim that non-retroactive changes in the law can serve as a basis for sentence reduction under 18 U.S.C. § 3582(c). It further argues that the 2023 amendment to the Sentencing Guidelines permitting consideration of nonretroactive changes in the law is invalid. The Government also contends that even if the 2023 amendments were valid and could be a basis for sentence reduction, Coleman is not entitled to relief on the merits because he cannot show he suffers from a gross disparity in sentence, that he is no longer a danger to the community, or that the sentencing factors of 18 U.S.C. § 3553(a) weigh in favor of early release.

The Court concludes that Coleman has shown extraordinary and compelling reasons warranting a sentence reduction under § 1B1.13(b)(6). Consideration of the sentencing factors under 18 U.S.C. § 3553(a) indicates Coleman will not be a danger to the community once released and it is appropriate to grant his motion for a sentence reduction. The Court will grant Coleman's motions to the extent that his sentence will be reduced to 336 months of imprisonment, plus a term of five years' supervised release. The Court will add an additional condition of supervision of up to four months at a residential reentry center, as deemed

appropriate by the U.S. Probation Office, and will amend the terms of supervised release to remove any conditions no longer applicable and to add such new terms as are appropriate.

**Procedural History**

On June 28, 2001, Coleman was charged by Indictment with the following crimes: Count I, Bank Robbery by Force or Violence, in violation of 18 U.S.C. § 2113(A), and Count II, Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c). On August 2, 2001, a Superseding Indictment was filed charging Coleman with additional crimes by adding the following counts: Count III, Bank Robbery by Force of Violence, in violation of 18 U.S.C. § 2113(A), Count IV, Carrying a Firearm During Drug Trafficking Crime and Crime of Violence, in violation of 18 U.S.C. §924(c), Count V, Distribution of Marijuana, in violation of 21 U.S.C. §841(a), and Count VI, Carrying a Firearm During a Drug Trafficking Crime and Crime of Violence, in violation of 18 U.S.C. § 924(c). On November 8, 2001, a second superseding indictment was filed charging Coleman with Count I, Conspiracy to Commit Armed Bank Robberies in violation of 18 U.S.C. § 371, Count II, Attempted Armed Bank Robbery, in violation of 18 U.S.C. § 2 and § 2113(a) and (d), Count III, Use of a Firearm in Relation to a Crime of Violence, in violation of 18 USC § 2 and § 924(c), Count IV, Armed Bank Robbery, in violation of 18 U.S.C. § 2 and § 2113(a) and (d), and Count V, Use of a Firearm in Relation to a Crime of Violence, in violation of 18 U.S.C. § 2 and § 924(c).

In March 2002, Coleman was found guilty by a jury of his role in a violent bank robbery conspiracy that included two attempted bank robberies and three completed bank robberies. Presentence Investigation Report ("PSR"), ECF No. 261 at 5, ¶ 8. In addition to the conspiracy conviction, Coleman was convicted of two substantive counts under 18 U.S.C. § 2113 and two 18 U.S.C. § 924(c) counts. The Government considered Coleman the most culpable of the three

defendants, with co-defendant Worthy described in the PSR as "slightly less culpable," PSR at 9, ¶ 19; the Court applied a two-point organizer/leader sentencing enhancement, id. at 12, ¶ 41; and Coleman received the longest sentence of the three defendants. United States v. Coleman, 349 F.3d 1077, 1080 (8th Cir. 2003).

In July 2002, Judge Webber sentenced Coleman to a term of 709 months (approximately 59 years) in prison, comprised of an aggregate 325-month sentence on the conspiracy and bank robbery counts, a mandatory consecutive 84-month sentence on the first § 924(c) count, a mandatory consecutive 300-month sentence on the second § 924(c) count, and a $791,088.32 restitution judgment. Amended Judgment, ECF No. 279 at 3. Coleman's 709-month sentence was near the low end of his 708-789 month guideline range.[2] The conviction was affirmed on direct appeal. Coleman, 349 F.3d at 1080.

On appeal, the Eighth Circuit summarized Coleman and his co-defendants' crimes as follows:

> [Kenneth Coleman, Andre Worthy, and Orlando Willis] masterminded a series of five bank robberies in the St. Louis area from December 1999 to June 2001. Each robbery followed the same modus operandi. After the bank had closed, [Coleman, Worthy, and Willis] would abduct at gunpoint the bank's manager—either in the parking lot of the bank or from her home. Often they would restrain and hold hostage the bank manager's family members or roommates. They would then force the manager to open the bank's vaults and automatic teller machines. During each of the robberies, [Coleman, Worthy, and Willis] wore ski masks or other disguises and communicated in code with each other through two-way radios. In total, they stole approximately $1.2 million from various banking institutions.

Coleman, 349 F.3d at 1080. The defendants used some of the proceeds from an early bank robbery to purchase gun powder, shotgun shell primers, and money orders that were later used to purchase grenade launchers. Id. at 1080-81.

---

[2] Coleman's co-defendant Andre Worthy was sentenced to 444 months, and co-defendant Orlando Willis to 275 months. Coleman, 349 F.3d at 1080.

A confidential informant came to the St. Louis Police Department on June 5, 2001, after a failed bank robbery attempt on June 2, 2001, and informed police that Coleman, Worthy, and possibly Willis were responsible for the string of bank robberies. Id. The confidential informant advised police and the FBI that the defendants "were planning another robbery and that they intended to murder someone while doing it." Coleman, 349 F.3d at 1081.

The facts of the attempted robbery on June 2, 2001, are particularly egregious. The PSR describes the crime as follows:

> On June 2, 2001, the assistant branch manager for the Firstar Bank at 3881 Gravois in St. Louis, Missouri was abducted from her home in South St. Louis County by Coleman, Worthy and other co-conspirators. The co-conspirators wore dark hoods and clothing with masks. They broke into the home through the front door at approximately 3:00 a.m. A co-conspirator put a silver gun in the victim's face and asked the location of her husband. After she did not immediately respond, a co-conspirator struck her in the face with a hand gun. After locating all of the occupants of the house, one of the coconspirators stayed at the home with the family while Coleman and another coconspirator[s] took the branch manager to the bank in her vehicle. The branch manager's husband, son, daughter, and a daughter's friend were bound with duct tape and held at gun point. The co-conspirator who stayed at the home communicated with the other two co-conspirators by cell phone and 'walkie talkies."
>
> When they arrived at the bank, the branch manager was informed to disable the alarm after unlocking the bank door. The co-conspirators then told the branch manager to open the vault, and she replied that the vault could not be opened without another employee present. Coleman then told the branch manager to open up the ATM machine. After the co-conspirators determined that she could not open the ATM, they bound her hands behind her back with a telephone cord and used duct tape to tape her feet together. The branch manager told Coleman that the cord was too tight, and she had no circulation in her hands. Coleman then removed the telephone cord from her hands and bound them behind her back with duct tape. One of the co-conspirators then removed the bank's surveillance tape from the VCR camera. The co-conspirators fled the scene without any of the bank's currency. After approximately thirty minutes, the branch manager freed herself and hit the panic button inside the bank. Evidence from this attempted robbery was stored in Willis' locker number 510 at the U-Store It.

PSR at 8-9, ¶¶15-16 (ECF No. 261).

Coleman asserts that as a result of nonretroactive changes in the law, today he would be subject to an 84-month consecutive sentence on the second § 924(c) count instead of the mandatory 300-month consecutive sentence he received on that count. Coleman contends that his sentence today would be at least eighteen years shorter, resulting in a gross disparity between the 2002 sentence and the sentence he would receive now. Coleman is 49 years old, with a projected release date of October 13, 2051.[3]

**Legal Standard**

A court can reduce a final sentence only under the limited circumstances listed in 18 U.S.C. § 3582(c). Before passage of the First Step Act in 2018, only the Bureau of Prisons (BOP) could move courts for compassionate release. Under the First Step Act, a defendant may file a direct motion with the court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" § 3582(c)(1)(A). Here, the Government does not dispute that Coleman has exhausted his administrative remedies.

Section 3582(c)(1)(A) "permits a district court to reduce a prisoner's sentence if, after considering the factors in 18 U.S.C. § 3553(a), 'it finds that extraordinary and compelling reasons warrant such a reduction' and 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" United States v. Taylor, 28 F.4th 929, 930 (8th Cir. 2022) (quoting 18 U.S.C. § 3582(c)(1)(A)). "In 28 U.S.C. § 994(t), Congress directed the Commission to define 'what should be considered extraordinary and compelling reasons for [a] sentence reduction.' [Prior to the First Step Act], the Commission published its substantive

---

[3] See Federal Bureau of Prisons, Inmate Locator, https://www.bop.gov/inmateloc/ (last visited July 8, 2024).

definition in U.S.S.G. § 1B1.13." United States v. Rodriguez-Mendez, 65 F.4th 1000, 1002 (8th Cir. 2023).

In Application Note 1 to § 1B1.13, the Commission defined certain categories of circumstances qualifying as "extraordinary and compelling reasons" under § 3582(c)(1)(A), such as a defendant's medical condition, age, and family circumstances. Prior to November 2023, Application Note 1 also included a catch-all category of "other reasons" determined by the Director of the BOP. See U.S.S.G. § 1B1.13. The Sentencing Commission lost its quorum shortly after the First Step Act was passed, however, and therefore was "unable to update its preexisting policy statement concerning compassionate release to reflect the First Step Act's changes." United States v. Long, 997 F.3d 342, 348 (D.C. Cir. 2021). The Commission finally regained a quorum in August 2022.

Effective November 1, 2023, the Commission amended § 1B1.13 to implement the First Step Act and to explicitly address defendant-initiated motions for compassionate release. See U.S.S.G. § 1B1.13). The amendment identifies several circumstances that, alone or in combination, may qualify as extraordinary and compelling reasons warranting a sentence reduction. See U.S.S.G. § 1B1.13.

As relevant here, § 1B1.13, as amended, provides:

(a) In General.—Upon motion of the . . . defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1)(A) extraordinary and compelling reasons warrant the reduction;
. . . .
(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13(a).

The amendment lists specific circumstances that constitute extraordinary and compelling reasons for sentence reduction, summarized as follows: (1) terminal illness diagnoses or serious medical, physical or mental impairments from which a defendant is unlikely to recover, and which "substantially diminish" the defendant's capacity for self-care in prison; or for which needed specialized medical care is not being provided resulting in a risk of serious deterioration or death; or under certain circumstances during an infectious disease outbreak; (2) aging-related health or mental decline where a defendant is over 65 years old and has served at least ten years or 75% of the sentence; (3) certain family circumstances of the defendant relating to the need to provide care to other family members; or (4) the defendant was the victim of sexual abuse, or physical abuse resulting in serious bodily injury, committed by or at the direction of any individual who had custody or control over the defendant while in custody serving the term of imprisonment sought to be reduced.

The amendment includes two additional circumstances that may constitute extraordinary and compelling reasons for sentence reduction: a catch-all provision for other circumstances comparable in gravity to the foregoing specific provisions, and a provision relating to unusually long sentences, this last the circumstance on which Coleman relies:

> (6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

§ 1B1.13(b)(6).

The 2023 amendment further provides limitation and guidance as to a defendant's ability to rely on a change in the law as a basis for sentence reduction, while carving out an exception for the unusually long sentence provision set forth in subsection (b)(6):

> (c) Limitation on Changes in Law.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

§ 1B1.13(c).

Finally, the amendment permits a court to consider a defendant's rehabilitation while serving the sentence, in combination with other circumstances, in determining whether and to what extent a sentence reduction may be warranted, but prohibits reliance on rehabilitation as the sole basis for relief. See § 1B1.13(d).

**Discussion**

A. Coleman's Eligibility Under Subsection (b)(6)

Coleman seeks a sentence reduction under U.S.S.G. § 1B1.13(b)(6), the unusually long sentence provision. Coleman contends he is entitled to a sentence reduction based on changes made by the First Step Act, which limited prosecutors' ability to "stack" multiple § 924(c) counts as part of the same case, as occurred here. At the time of Coleman's conviction, § 924(c) established a 25-year mandatory minimum sentence applicable "[i]n the case of a second or subsequent conviction," 18 U.S.C. § 924(c)(1)(C) (1998), while the current version of § 924(c) imposes a twenty-five year mandatory minimum sentence "[i]n the case of a violation of this subsection that occurs after a prior conviction under this subsection has become final[.]" 18 U.S.C. § 924(c)(1)(c) (2002).

Coleman asserts that because he did not have a prior conviction under § 924(c) at the time of sentencing, if sentenced today, he would be subject to a statutory minimum of seven years for his second violation of § 924(c) instead of twenty-five years. Coleman contends his sentence could be even shorter today because the Sentencing Guidelines are now advisory, not mandatory as they were at the time of his sentencing. Coleman asserts this nonretroactive change in the law results in a gross disparity between his 709-month sentence and the sentence he would receive today, and that his individualized circumstances and the sentencing factors of 18 U.S.C. § 3553(a) support a reduction of his sentence to time served.

*1. The Court's Authority to Consider Non-Retroactive Changes in the Law as a Basis for Sentence Reduction*

As a threshold matter, the Government argues that binding Eighth Circuit precedent forecloses Coleman's claim that non-retroactive changes in the law can serve as a basis for sentence reduction under 18 U.S.C. § 3582(c), and that the 2023 amendment to the Sentencing Guidelines permitting consideration of nonretroactive changes in the law is invalid.

The Government argues that any reliance on a nonretroactive change in the law as a basis for sentence reduction is foreclosed by the Eighth Circuit's decisions in United States v. Crandall, 25 F.4th 582 (8th Cir. 2022), and United States v. Rodriguez-Mendez, 65 F.4th 1000 (8th Cir. 2023). This Court has previously considered and rejected this argument. See United States v. Capps, 1:11-CR-108 AGF, 2024 WL 880554, at *6-7 (E.D. Mo. Jan. 31, 2024); see also United States v. Thomas, 4:97-CR-259 RLW, slip op. at 31 (E.D. Mo. June 11, 2024) (agreeing with Judge Audrey G. Fleissig's analysis in Capps, and adopting her reasoning). In sum, Crandall and Rodriguez-Mendez were decided before the 2023 amendment took effect, and to the extent Rodriguez-Mendez discussed the proposed amendment, the discussion was non-binding dicta which appears to contradict the plain reading of subsection (b)(6). Further, this

Court is bound by the applicable policy statement. See Crandall, 25 F.4th at 584 ("Although a policy statement standing alone may be merely 'advisory,' . . . the statute in this case makes consistency with an applicable policy statement a *mandatory* condition for a reduction in sentence.") (citations omitted); see also Stinson v. United States, 508 U.S. 36, 44-45 (1993) (holding commentary to the Sentencing Guidelines is to "be treated as an agency's interpretation of its own legislative rule" and given "controlling weight unless it is plainly erroneous or inconsistent with" the guideline it interprets).

The Supreme Court has acknowledged that Congress delegated to the Sentencing Commission "broad" and "significant discretion in formulating guidelines for sentencing convicted federal offenders." United States v. LaBonte, 520 U.S. 751, 757 (1997). It has described the sentencing commission as a "peculiar institution," Misretta v. United States, 488 U.S. 361, 384 (1989), and noted its "unusual explicit power to determine whether and to what extent its amendments reducing sentences will be given retroactive effect, 28 U.S.C. § 994(u)," Braxton v. United States, 500 U.S. 344, 348 (1991).

The Government also argues that the Sentencing Commission exceeded its Congressionally delegated authority in promulgating subsection (b)(6), because the Commission cannot act contrary to the statute. It asserts that subsection (b)(6) conflicts with 18 U.S.C. § 3582(c)(1)(A)'s plain text, context, and purpose, as Congress expressly declined to make statutory changes retroactive, and nonretroactive changes to sentencing law are neither extraordinary nor compelling. Finally, it argues the subsection raises separation of powers concerns because it contradicts Congress's deliberate choice not to make the change in sentencing law here retroactive.

This Court has also previously considered and rejected these same arguments, for these reasons:

The Court disagrees. "Congress is not shy about placing [sentencing modification] limits where it deems them appropriate." Concepcion [v. United States], 597 U.S. [481] at 494 [(2022)]. In this case, Congress broadly empowered and directed the Commission to issue binding guidance as to what circumstances qualify for potential reduction. See § 3582(c)(1)(A). Nothing in the statute's text prohibits the Commission from considering nonretroactive changes in the law as extraordinary and compelling reasons for a sentence reduction.

The absence of any such limitation is telling. Congress could have drafted such a blanket prohibition into § 3582(c)(1)(A), as it did in 28 U.S.C. § 994(t) by specifying that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." See also Concepcion, 597 U.S. at 483 ("Congress has shown that it knows how to direct sentencing practices in express terms."). Congress chose not to impose a similar prohibition with respect to nonretroactive changes in the law.

The Government also echoes the Eighth Circuit's concern expressed in Crandall that considering nonretroactive change in the law as a ground for a sentence reduction would result in a "freewheeling opportunity for resentencing" with no "sound limiting principle." Crandall, 25 F.4th at 586. However, the Commission squarely addressed that concern when drafting subsection (b)(6), by narrowly limiting the circumstances in which a defendant may be resentenced. Rather than categorically permitting relief based on nonretroactive changes in the law, subsection (b)(6) requires a case-specific, context-based determination and allows for relief only in those cases where a defendant has served (i) at least 10 years (ii) of an unusually long sentence, and (iii) a change in law has produced a "gross disparity" between the sentence being served and the sentence likely to be imposed at the time the motion is filed.

As with legislative rules adopted by federal agencies, guidelines and policy statements such as the amended § 1B1.13 are a matter of the Commission's "particular area of concern and expertise," and as a result of an express congressional delegation of authority, the "Commission itself has the first responsibility to formulate and announce" such policy statements. Stinson, 508 U.S. at 45. When "Congress entrusts to the [Commission], rather than to the courts, the primary responsibility for interpreting the statutory term[,] ... [a] reviewing court is not free to set aside [that interpretation] simply because it would have interpreted the statute in a different manner." Batterton v. Francis, 432 U.S. 416, 425 (1977). Indeed, as the Commission notes in its commentary, the Government itself has on several occasions successfully blocked Supreme Court review of the issue of whether nonretroactive changes in the law may be considered under § 3582(c)(1)(A) as extraordinary and compelling reasons on the ground that the issue "should be addressed first by the Commission." See Official Commentary, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf, at p. 6 (citing the Department of Justice's opposition to grant of certiorari in various cases).

The Commission has now addressed the issue and has adopted an applicable policy statement[.]

Capps, 2024 WL 880554, at *7-8; see also Thomas, 4:97-CR-259, slip op. at 32-33 (quoting Capps with approval).

This Court also finds it significant that Congress did not disapprove of the amendment during the 180-day review period and allowed it to go into effect in November 2023. The Government's arguments are rejected.

### 2. Coleman is Eligible for a Reduced Sentenced Under § 1B1.13(b)(6)

On the merits, the Government responds that Coleman is not entitled to relief under § 1B1.13(b)(6) because he cannot prove he suffers from a gross disparity in sentence, and cannot show that he is no longer a danger to the community and that the sentencing factors of 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction. The Government states that while Coleman's Sentencing Guidelines range would now be 492-573 months, post-United States v. Booker, 543 U.S. 220 (2005), the Court would have the opportunity to vary upward above the guidelines, and Coleman cannot show that the Court would not have varied upward in a case where on five occasions he kidnapped female bank employees, held their family members hostage, and carjacked vehicles to commit the robberies. The Government argues the § 3553(a) sentencing factors do not support Coleman's release based on the nature of the crimes he committed: "Coleman kidnapped or forcibly held—essentially for ransom—11 individuals in this crime spree, including three teenagers, on five separate occasions while letting nothing stop him from nearly [sic] his loot]." ECF No. 417 at 31.

Subsection 1B1.13(b)(6) authorizes district courts to consider nonretroactive changes in the law (other than nonretroactive changes to the Guidelines Manual) as extraordinary and compelling circumstances warranting a sentence reduction, but only under a narrow set of

circumstances. Specifically, the following circumstances must exist: (1) the defendant must be serving an unusually long sentence; (2) the defendant must have served at least 10 years of that sentence; (3) the change in the law must have produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed; and (4) the court must have fully considered the defendant's individual circumstances.

These circumstances are present here. The Court finds that Coleman is serving an unusually long sentence. The U.S. Sentencing Commission considers any sentence over 470 months to be a de facto life sentence.[4] The Sentencing Commission has collected and analyzed data that shows such sentences are unusual. "As of January 2015, there were 1,983 offenders in the BOP system serving a sentence of incarceration of 470 months or longer. They accounted for 1.1 percent of all federal sentenced offenders." U.S. Sent. Comm'n, Life Sentences in the Federal System at 10 (Feb. 2015).[5] The Sentencing Commission published an updated research paper on life sentences in the federal system in July 2022, analyzing data from fiscal years 2016 to 2022. During that time period, 799 offenders were sentenced to de facto life imprisonment, accounting for 0.2 percent of the total federal offender population. U.S. Sent. Comm'n, Life Sentences in the Federal System at 3 (July 2022).[6] Coleman's 709-month sentence is approximately nineteen years long than a 470 month de facto life sentence, and is an outlier and unusually long based on the Sentencing Commission data that shows how infrequently such sentences are imposed in the federal system.

---

[4]The Sentencing Commission considers a sentence of 470 months or longer to be a "de facto" life sentence. See U.S. Sent. Comm'n, Life Sentences in the Federal System at 1 (July 2022), available at https://www.ussc.gov/research/research-reports/life-sentences-federal-system (last visited July 8, 2024).

[5]Available at https://www.ussc.gov/research/research-publications/life-sentences-federal-criminal-justice-system (last visited July 8, 2024).

[6]See n.4, supra.

It is undisputed that Coleman has served more than ten years of the sentence, as he has served approximately twenty-three years to date.

As stated above, at the time of Coleman's conviction, § 924(c) established a twenty-five-year mandatory minimum sentence applicable "[i]n the case of a second or subsequent conviction," 18 U.S.C. § 924(c)(1)(C) (1998). The "stacking" of mandatory minimum penalties for multiple violations of § 924(c) resulted in excessively severe sentences in some cases, and gave rise to significant criticism. See, e.g., Deal v. United States, 508 U.S. 129, 146 n.10 (1993) (Stevens, J., dissenting) ("[P]unishing first offenders with twenty-five-year sentences does not deter crime as much as it ruins lives.") (quoting United States v. Jones, 965 F.2d 1507, 1521 (8th Cir. 1992)).

In 2018, Congress enacted the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018). As relevant here, the First Step Act disallowed the practice of "stacking" § 924(c) convictions in a single prosecution for a first offense. See First Step Act § 403(a), Pub. L. 115-391, 132 Stat. at 5221–22, codified at 18 U.S.C. § 924(c)(1)(C). Now, the statute authorizes the stacking of mandatory minimum sentences only "[i]n the case of a violation of [§ 924(c)] that occurs *after a prior conviction under this subsection has become final*." 18 U.S.C. § 924(c)(1)(C) (emphasis added). By restricting mandatory minimum sentence stacking in § 924(c) to final prior convictions, "Congress sought to ensure that stacking applied only to defendants who were truly recidivists." United States v. Henry, 983 F.3d 214, 218 (6th Cir. 2020).

If the current version of § 924(c) been in effect at the time of Coleman's sentencing, his two § 924(c) convictions would have resulted in mandatory minimum sentences of seven years each, rather than seven years and twenty-five years. See 18 U.S.C. § 924(c)(1)(A)(ii) (2022). The First Step Act did not make this change retroactive, however, so it does not assist people like

15

Coleman who were sentenced under § 924(c) before enactment of the First Step Act. See First Step Act § 403(b), Pub. L. 115-391, 132 Stat. at 5222.

This Court finds that the First Step Act's changes to 18 U.S.C. § 924(c) produce a "gross disparity" between Coleman's sentence and the one he would likely receive today. U.S.S.G. § 1B1.13(b)(6). Today, Coleman would likely be subject to a sentence eighteen years shorter than the one he received in 2002. Under comparable circumstances, numerous district courts have relied on § 1B1.13(b)(6) and the statutory change to § 924(c) to conclude that gross sentencing disparities resulted from the statute's former "stacking" regime, and that these constitute extraordinary and compelling reasons for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i).[7]

When the gross disparity between Coleman's sentence as imposed and what he would likely receive today is considered in conjunction with Coleman's individual circumstances, the

---

[7]See, e.g., United States v. Ali, No. 07-0042-2, 2024 WL 3161749 (E.D. Pa. June 25, 2024) (reducing a 32-year sentence to 19 years, where the defendant had served 17 years); Reed v. United States, No. 4:96-cr-22-3, 2024 WL 3153221 (E.D. Va. June 24, 2024) (reducing 65-year sentence to 50 years); United States v. Baylor, No. 3:11CR64-1, 2024 WL 3093573 (E.D. Va. June 20, 2024) (reducing 514-month sentence to 305 months); United States v. Legrand, No. CCB-10-052, 2024 WL 2941282 (D. Md. June 11, 2024) (reducing 480-month sentence to 248 months); United States v. Pierce, No. 11-cr-576(PKC), 18-cv-2412(PKC) , 2024 WL 2219739 (S.D.N.Y. May 15, 2024) (reducing 540-month sentence to 360 months); United States v. Bizzell, No. 6:10-cr-145-MSS-EJK, 2024 WL 1832995 (M.D. Fla. Apr. 26, 2024) (reducing 780-month sentence to 300 months); United States v. Byam, No. 12-cr-586-01-OEM, 2024 WL 1556741 (E.D.N.Y. Apr. 10, 2024) (reducing a 32-year sentence to 16 years, in a case where the defendant had served 11 years); United States v. Donato, No. 95-cr-223-JMA-AYS, 2024 WL 1513646 (E.D.N.Y. Apr. 8, 2024) (reducing 105-year sentence to 50 years, where the defendant served 28 years); United States v. Cousins, No. 1:92-cr-250-MHC, 2024 WL 1516121 (N.D. Ga. Apr. 4, 2024) (reducing approximately 74-year sentence to time served, where the defendant served over 31 years); United States v. Colley, No. 2:94-cr-7-RWS, 2024 WL 1516128 (N.D. Ga. Mar. 26, 2024) (reducing 60-year sentence to time served, where the defendant served over 31 years); United States v. Harper, No. 1:04-cr-218-SDG-GGB, 2024 WL 1053547 (N.D. Ga. Mar. 11, 2024) (reducing 87-year sentence to time served, where the defendant had served approximately 20 years); United States v. Skeeters, No. 2:05-cr-00530-HB, 2024 WL 992171 (E.D. Pa. Mar. 7, 2024) (reducing sentence of approximately 82 years to approximately 28 years, where the defendant had served 13 years); United States v. Martinez, No. 2:01-cr-564-TC, 2024 WL 866822 (D. Utah Feb. 29, 2024) (reducing 65-year sentence to time served, where the defendant had served 22 years); United States v. Brown, No. 2:95-cr-66, 2024 WL 409062, __ F.Supp.3d __ (S.D. Ohio Feb. 2, 2024) (reducing approximately 119-year sentence to time served, where the defendant had served 26 years); United States v. Smith, No. 5:07-cr-48-MW, 2024 WL 885136 (N.D. Fla. Feb. 2, 2024) (reducing 30-year sentence to 10 years).

Court concludes that Coleman's circumstances constitute an extraordinary and compelling reason for sentence reduction.

Coleman has submitted substantial evidence of his rehabilitation in the years since his conviction, which this Court can consider alongside other factors when determining if extraordinary and compelling reasons for sentence reduction exist. § 1B1.13(d). Coleman establishes that he has made productive use of his time while incarcerated, through steady employment and numerous educational and vocational achievements. These accomplishments to better himself are the more admirable because Coleman had no reason to believe he would leave prison until he was almost 76 years old.

Coleman has completed many BOP programs, including the eighteen-month (500-hour) faith-based reentry Life Connections Program; the nine-month (500-hour) cognitive behavioral Residential Challenge Program; the 72-hour faith-based reentry Threshold Program; the 27-hour Criminal Thinking group; and the USP Leavenworth Drug Education Program. Between 2015 and 2023, Coleman completed an accredited apprenticeship program for machinists while working at UNICOR, which entailed 8,000 hours of on-the-job training and 567 hours of classroom learning, resulting in a journeyman machinist designation from the U.S. Department of Labor.

Perhaps most significant, Coleman was selected to be a Suicide Companion in the Inmate Companion Program. A letter from BOP Staff Psychologist J. Prince, Psy.D., Inmate Companion Program Coordinator at FCI El Reno, describes the program and the characteristics and qualities required of a Suicide Companion:

> Coleman, Kenneth (Reg. No. 28256-044) began participating in the Inmate Companion Program as a Suicide Companion on October 7, 2013. This program requires extensive training and a high level of responsibility. Because of the very sensitive nature of the job, the selection of inmate observers requires considerable care. Suicide Companions are selected based upon their ability to perform the

specific task but also for their reputation within the institution. They must be mature, reliable individuals who have credibility with both staff and inmates. They must be able to protect the suicidal inmate's privacy from other inmates; while being accepted in the role by staff. Finally, they must be able to perform their duties with minimal need for direct supervision. The duties of a Suicide Companion involve maintaining constant observation of the individual on suicide watch, making 15-minute log entries, and alerting staff if the individual engages in any behavior suggestive of self-harm or destruction of property.

(ECF No. 404-1 at 19). Inmates are selected as Suicide Companions based on criteria of maturity, honesty, reliability, reputation, credibility, objectivity, and responsibility. (Id. at 25.) Coleman's successful participation in the program for more than ten years is weighty evidence that he has gained maturity and developed characteristics of responsibility, reliability, and honesty, qualities he lacked at the time of the crimes committed in this case.

Further evidence of Coleman's personal growth and change while incarcerated is established by his pro se motion in this case. (ECF No. 404.) Coleman describes how, upon becoming incarcerated for decades, he made an affirmative decision to change his way of thinking in order to change his behavior. Coleman has taken action through introspection, employment, and programming to better himself, to learn, and to develop spiritual growth and a moral compass. The Court is struck by Coleman's description of how, upon being placed in fear of his life for the first time in a violent prison setting, he understood that he previously "could not relate, experientially, to the victims of my crimes. And as a result I did not fully grasp the gravity of my crimes." (Id. at 6.) He explains, "The only thing that helped me begin to understand what I was going through was the clear and constant conviction in my spirit that I had made the victims of my crimes feel the same way I was feeling at that time." (Id.)

Coleman describes the powerful effect this incident had on his criminal thinking:

[It was] a light bulb moment for me regarding the crimes I committed. When I was younger I did not think much of my actions. However, today I know what it feels like to be ashamed of the way one has behaved. And the only thing I've thought of to help mitigate that sham[e] is to put forth the only penance available

18

to me, that of a changed life. Hopefully, by succeeding in this, people will see that
I now understand what I did, and maybe then I can be forgiven.

(ECF No. 404 at 7.) Coleman's expression of his changed thinking and remorse for his actions,
likely informed by the many self-improvement programs he has taken, strikes the Court as
evidence of his development of empathy, which he lacked at the time of his offenses, and true
rehabilitation.

Coleman also establishes that his disciplinary history while incarcerated has been
exemplary. Remarkably, Coleman does not appear to have received a single conduct violation in
over twenty-three years of imprisonment, and his Suicide Companion position requires that he
not receive any incident reports. (ECF No. 404-1 at 24.) "Even the most rule-abiding among us
would likely collect a few disciplinary infractions if subject to a host of rules governing the
minutiae of daily life and monitored around-the-clock—for decades." United States v. Brown,
No. 2:95-cr-66(2), 2024 WL 409062, at * 9, __ F.Supp.3d __ (S. D. Ohio Feb. 2, 2024). This is
not true of Coleman, however, and this circumstance weighs in his favor.

In sum, the Court finds that Coleman establishes extraordinary and compelling reasons
for a reduction of his sentence pursuant to U.S.S.G. § 1B1.13(b)(6).

B. Section 3553(a) Factors

Section 1B1.13 of the Sentencing Guidelines further provides that a court may reduce a
term of imprisonment only if it determines that "[t]he defendant is not a danger to the safety of
any other person or to the community[,]" U.S.S.G. § 1B1.13(3), and only after it considers the
factors set forth in 18 U.S.C. § 3553(a).

The Court finds that the factors listed in 18 U.S.C. § 3553(a) weigh in favor of reducing
Coleman's sentence. Because section 3553(a) establishes factors to consider in initially imposing
a sentence, not every factor applies here. The applicable factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . [and]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a).

The nature and circumstances of Coleman's offenses are extremely serious and very disturbing to the Court. As described in the Presentence Investigation Report and the Eighth Circuit's opinion, Coleman and his co-defendants committed multiple armed robberies or attempted robberies by stalking and then abducting female bank managers, usually from their homes, and forcing them to go to the financial institutions to obtain money. The defendants brandished firearms, carjacked the bank managers' vehicles, and held the bank managers' families hostage, threatening them with firearms and using duct tape to restrain some of the victims. The emotional distress injuries that these crimes caused for numerous innocent people, including children, can only be imagined and may be lifelong for the victims. The only mitigating aspect of the crimes is that no one was killed or seriously injured during their commission.

Coleman's crimes are very serious offenses that merit severe punishment. That said, Congress's action in passing the First Step Act with language that precludes stacking of § 924(c)

sentences constitutes a clear recognition that Coleman's current sentence goes beyond what is sufficient and may be a "greater than necessary" imposition of sentence. 18 U.S.C. § 3553. The same extremely serious conduct in Coleman's two § 924(c) counts would subject a defendant sentenced today to a mandatory minimum sentence of fourteen years' imprisonment, not the thirty-two year minimum applicable during his sentencing in 2002.

As for the defendant's history and characteristics, Coleman was born in St. Louis but during his childhood moved throughout the United States and to Germany because his mother was in the military. He graduated from Eureka High School in 1993 and earned an associate degree in Machine Shop Technology from Ranken Technical College in 1997. Coleman worked as a machine operator for approximately six months in 2000. Coleman's criminal history includes a 1997 conviction for driving with a suspended license for which he received a suspended execution of sentence, and a 2002 federal conviction for possession with the intent to distribute marijuana, resulting in a Criminal History Category of II. Coleman began using marijuana on a daily basis as a teenager, and heroin on a daily basis beginning in approximately 1997.

The Court also considers Coleman's current characteristics and his history while incarcerated, which it has described in detail above. Among his other numerous positive attributes and accomplishments, as an inmate entrusted with the role of Suicide Companion for ten years, Coleman demonstrates he has grown and changed, recognized and abandoned criminal thinking, and developed characteristics of responsibility, trustworthiness, maturity, honesty, reliability, credibility, morality, and empathy. The evidence of his remorse and genuine rehabilitation, when considered in combination with the grossly disproportionate sentence Coleman received, is a factor that weighs in favor of a sentence reduction.

The Court considers the need for the sentence imposed to serve the enumerated purposes of punishment. Id. § 3553(a)(2). The court should "impose a sentence sufficient, but not greater than necessary, to comply with [these] purposes." Id. § 3553(a). The Court finds the 709-month sentence was greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from Coleman's crimes.

The Court considers whether Coleman presents "a danger to the safety of any other person or to the community[.]" U.S.S.G. § 1B1.13(2). Factors relevant to this inquiry include: (1) the nature and circumstances of the offenses of conviction; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

The first three factors have been discussed, so the Court focuses on the nature and seriousness of the danger posed by Coleman's release. The Court cannot say that Coleman poses no risk at all to public safety, based on the circumstances of this offense and his prior convictions, but finds the risk of Coleman engaging in further criminal conduct is low, as reflected by his BOP pattern score. The BOP has significant expertise in evaluating offenders' risk levels and the Court gives consequent consideration to its evaluation of Coleman's risk level. Coleman's record of steady employment, in particular the responsibility and dedication he has shown in long-term positions as a Suicide Companion and a UNICOR machinist apprentice, his completion of numerous in-depth self-improvement programs and many educational programs, and his perfect conduct while in prison, considered together+ offer strong support for the conclusion that he would not be a danger to the community if released. Coleman's "exemplary postsentencing conduct may be taken as the most accurate indicator of his present purposes and tendencies[.]" Pepper v. United States, 562 U.S. at 476, 492 (citing 18 U.S.C.

§ 3553(a)(1)). Coleman is not the same man today that he was in 2002, and it is almost unthinkable that he could commit a similar crime in the future.

In addition, Coleman will have a five-year term of supervised release after his custodial sentence ends, and the support and oversight of the U.S. Probation Office further reduces any potential danger to the community from his early release. The Probation Office will supervise Coleman and provide structure and support through its numerous programs designed to facilitate reentry into society. Coleman's demonstrated willingness and ability to comply with institutional rules is persuasive evidence that he will comply with the conditions of supervised release and his probation officer's instructions.

Further, Coleman has a strong release plan. He recognizes the need for an initial residential reentry center placement, and has housing, transportation, and family support available with his mother and her husband, both retired from the U.S. Army, in St. Peters. (See ECF No. 409.) Coleman has recent, extensive experience as a journeyman machinist that should permit him to obtain well-paid employment soon after his release. This will enable him to become self-supporting and to continue making restitution payments, as he has done during incarceration.

On balance, the Court concludes that the applicable § 3553(a) factors support Coleman's request for a reduction in sentence pursuant to § 1B1.13(b)(6). Nonetheless, application of the § 3553(a) factors does not warrant a release to time served (about 23 years' imprisonment), as Coleman requests. There remains a need for sufficient incarceration to reflect the extreme seriousness of his offenses, to provide just punishment, to promote respect for law, and to deter others from committing similar crimes. The Court finds that the § 3553(a) factors warrant a reduction of Coleman's sentence from 709 months of imprisonment to 336 months (28 years) of imprisonment.

**Conclusion**

For the foregoing reasons, Coleman has shown extraordinary and compelling reasons for a sentence reduction under U.S.S.G. § 1B1.13(b)(6), after full consideration of his individualized circumstances. The balance of the § 3553(a) factors supports a sentence reduction here. Coleman's motions for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) are granted pursuant to § 1B1.13(b)(6), to the extent that Coleman will be sentenced to 336 months of imprisonment. Upon release, Coleman will be subject to conditions of supervision for a period of five years on terms previously imposed, with an additional condition of up to four months' placement in a residential reentry center, as determined by the Probation Office. The terms of supervised release will be further amended to remove any conditions no longer applicable and to include other pertinent changes.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Kenneth Coleman's pro se "1B1.13(b)(6) Reduction in Term of Imprisonment Under 18 USC 3582(c)(1)(a) Motion for Compassionate Release" (ECF No. 404) and Supplemental motion under 18 U.S.C. § 3582(c)(1)(A)(i) and U.S.S.G. § 1B1.13(b)(6) (ECF No. 410) are **GRANTED** as set forth in this Memorandum and Order. The Court now imposes a sentence of 336 months of imprisonment with five (5) years of supervised release. This sentence consists of a term of 60 months on Count 1; a term of 108 months on each of counts 2 and 4, to be served concurrently with each other and consecutively to the sentence imposed on count 1 to produce an aggregate term of 168 months on counts 1, 2, and 4; a term of 84 months on count 3; and a term of 84 months on count 5, with each of counts 3 and 5 to be served consecutively to each other and consecutively to the sentence imposed on counts 1, 2, and 4, to produce a total term of 336 months.

**IT IS FURTHER ORDERED** that Defendant Kenneth Coleman's conditions of supervision are **MODIFIED** to the extent the Court imposes an additional special condition of supervision of up to four months at a residential reentry center, as deemed appropriate by the U.S. Probation Office, and the following special conditions are added in place of the Additional Supervised Release Terms in the Amended Judgment:

> You must submit to substance abuse testing to determine if you have used a prohibited substance. You must not attempt to obstruct or tamper with the testing methods.

> You must participate in a substance abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.).

> You must submit your person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a physical or electronic search conducted by a United States probation officer. You must warn any other occupants that the premises may be subject to searches pursuant to this condition. The probation officer may conduct a search under this condition only when reasonable suspicion exists that you have violated a condition of supervision and that the areas to be searched contain evidence of this violation.

> You must apply all monies received from any anticipated and/or unexpected financial gains, including any income tax refunds, inheritances, or judgments, to the outstanding Court-ordered financial obligation. You must immediately notify the probation office of the receipt of any indicated monies.

> You must provide the probation officer with access to any requested financial information and authorize the release of any financial information. The probation office may share financial information with the U.S. Attorney's Office.

> You must not incur new credit charges, or open additional lines of credit without the approval of the probation officer.

> If the judgment imposes a financial penalty, you must pay the financial penalty in accordance with the Schedule of Payments sheet of the judgment. You must also notify the court of any changes in economic circumstances that might affect the ability to pay this financial penalty.

**IT IS FURTHER ORDERED** that an Amended Judgment will be issued separately.

**IT IS FINALLY ORDERED** that the Clerk shall provide a copy of this Order to the Probation Office and to the Bureau of Prisons.

_Ronnie L. White_

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 8th day of July, 2024.