IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| Plaintiff, | ) |
| v. | ) No. 4:01-cr-00296-MTS-1 |
| KENNETH COLEMAN | ) |
| Defendant. | ) |

**MOTION FOR A BRIEFING SCHEDULE AND SELF-SURRENDER DATE**

In 2002, Kenneth Coleman was sentenced to 709 months in federal prison. In 2024, Judge White reduced Mr. Coleman's sentence to 336 months, finding that Mr. Coleman had presented substantial evidence of rehabilitation and would not receive the same sentence today. In his written order, Judge White relied upon a specific Sentencing Commission policy statement, USSG § 1B1.13(b)(6), which was subsequently invalidated by the Supreme Court in *Rutherford v. United States*, 146 S. Ct. 1320 (2026). For that reason, the Eighth Circuit reversed Judge White's decision and remanded the case to this Court. But, despite the invalidation of USSG § 1B1.13(b)(6), there are still grounds for a sentence reduction, and this Court can reinstate the 336-month judgment.

Mr. Coleman was released after Judge White amended his sentence and has spent the last 22 months living and working in St. Louis. He has done exceptionally well on supervision. Now, he asks the Court to set a briefing schedule allowing him until December 1, 2026 to prepare and file a motion for a sentence reduction under USSG § 1B1.13(b)(5)—a provision of the policy statement which remains valid after *Rutherford.* In addition, he asks the Court to set a self-surrender date no earlier than March 1, 2027, so that he can remain out of custody during the litigation of the motion.

## Background

When Judge White reduced Mr. Coleman's sentence, he filed a 26-page opinion finding that Mr. Coleman had demonstrated "extraordinary and compelling" circumstances warranting a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).[1] In addition to finding that Mr. Coleman qualified for a sentence reduction under USSG § 1B1.13(b)(6), Judge White found that, over more than two decades in the Bureau of Prisons, Mr. Coleman had "grown and changed, recognized and abandoned criminal thinking, and developed characteristics of responsibility, trustworthiness, maturity, honesty, reliability, credibility, morality, and empathy."[2]

The United States filed an appeal.[3] It did not challenge Judge White's findings on rehabilitation; instead, it argued Judge White erred by relying on USSG § 1B1.13(b)(6).[4] Eventually, this argument was successful: Mr. Coleman conceded error and the Eighth Circuit vacated the amended judgment.[5]

But, while the government's appeal was pending, Mr. Coleman was released from BOP custody. On December 17, 2024, he moved to Dismas House, the BOP's residential re-entry center in St. Louis.[6] He has been living in St. Louis since then and, over the past 22 months, Mr. Coleman has thrived outside of prison walls. He has reunited with his family, found steady work as a machinist, and enrolled in an online degree program.[7] According to his Probation Officer, he "maintains lifestyle stability," "participates in pro-social activities," and is "compliant, communicative, and cooperative[.]"[8]

---

[1] Doc. 424.
[2] *Id.* at 21.
[3] Doc. 442.
[4] *See generally* Br. of Appellant, *United States v. Kenneth Coleman*, No. 24-2809 (8th Cir. Dec. 12, 2024).
[5] Judgment, *United States v. Kenneth Coleman*, No. 24-2809 (8th Cir. Oct. 21, 2026).
[6] *See* Ex. 1 at 1 (Affidavit of Kenneth Coleman).
[7] *Id.* at 1-5.
[8] Doc. 458 at 3.

## Legal Standard

The Court may set a self-surrender date for anyone who has been convicted, sentenced, and is awaiting execution of judgment—even someone who would otherwise be subject to mandatory detention under 18 U.S.C. § 3143(a)(2). To do so, the Court must find "exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c). In addition, the Court must find, by clear and convincing evidence, that the person is "not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a)(1).

## Argument

### I. Exceptional circumstances exist.

#### A. For 25 years, Kenneth Coleman has lived a changed life.

Unlike the vast majority of defendants who request a self-surrender date, Mr. Coleman has not committed any recent crime. His convictions stem from conduct which occurred between 1999 and 2001: during that time, Mr. Coleman planned five bank robberies in the St. Louis area.[9] Three were successful; two were not. But, during all five of the bank robberies, Mr. Coleman and his co-conspirators followed a similar modus operandi: they identified bank employees, abducted them at gunpoint, and forced them to open the bank vaults and ATM machines.[10]

Mr. Coleman spent 23 years and 6 months in custody because of his conduct, the equivalent of a 28-year sentence.[11] Like many defendants, he did not initially understand the gravity of his crimes. But that changed in time. As Mr. Coleman wrote in 2024,

> When I was younger I did not think much of my actions. However, today I know what it feels like to be ashammed [sic] of the way one has behaved. And the only thing I've thought of to help mitigate that sham[e] is to put forth the only penance available to

[9] PSR at ¶ 8; Doc. 424 at 4-5.
[10] PSR at ¶¶ 8-17; *see also United States v. Coleman*, 349 F.3d 1077, 1080 (8th Cir. 2003).
[11] Mr. Coleman was arrested on June 6, 2001 and was continuously incarcerated until December 17, 2024.

> me, that of a changed life. Hopefully, by succeeding in this, people will see that I now understand what I did, and maybe then I can be forgiven.[12]

While in BOP custody, Mr. Coleman fully committed to change. Though he believed he would be incarcerated until his mid-70s, he threw himself into educational and rehabilitative programming.[13] For over a decade, he served as a companion to inmates who had been placed on suicide watch, ensuring that they did not harm themselves or others.[14] In addition, he completed an 8,000-hour machinist apprenticeship, learning a trade while in custody,[15] and maintained a spotless disciplinary record.[16] Prior to his release, he was classified as presenting a "minimum" risk of recidivism and was assigned to a "low" security setting at FCI El Reno.[17]

Within a month of his release from BOP custody, Mr. Coleman was hired as a machinist.[18] He currently works at Leonard's Metal Inc., an aerospace manufacturing company and a division of Sonaca – North America.[19] He is enrolled at Colorado Technical University and is scheduled to earn his bachelor's degree in business administration in 2027.[20] Every week, he attends church services and bible study and, once every two weeks, he sees a therapist.[21] He maintains a strong relationship with his Probation Officer and regularly pays restitution.

Mr. Coleman currently lives with his mother and stepfather in St. Peters.[22] His son, daughter-in-law, and granddaughter live nearby, in Fenton, and several of his aunts live in north county. He is close with his family, and they are overwhelmingly supportive: as his mother writes,

---

[12] Doc. 404 at 7.
[13] *See, e.g.*, Ex. 2 at 10-13 (BOP Records).
[14] *See id.* at 11; *see also* Doc. 404-1 at 19.
[15] Ex. 2 at 12; *see also* Doc. 404-1 at 26-29.
[16] Ex. 2 at 9.
[17] *Id.* at 1-2.
[18] Ex. 1 at 2.
[19] *Id.* at 3; *see also* Ex. 3 (Sonaca Pay Records).
[20] Ex. 4 (CTU Transcript).
[21] Ex. 1 at 4-5 (Affidavit from Kenneth Coleman); Ex. 5 (Letter from James Keeton).
[22] Ex. 6 at 1 (Letter from Diane Willis).

"He has been back in our society as a free man for over a year and I have seen nothing but positive behavior. I am so sure Kenneth is a changed man. I am willing to do anything that the courts need me to do to support the courts and my son Kenneth."[23]

**B. Mr. Coleman must return to prison because of a legal decision, not because of any recent conduct.**

Today, Mr. Coleman finds himself in a unique and unenviable position. When Judge White reduced his sentence in 2024, Mr. Coleman was told that he had paid his debt to society. He was told that, as long as he continued on a law-abiding path, he would not have to return to custody. And then he was told—after doing everything right—that a mistake had been made. He not only faced a return to prison, but the reinstatement of his original, 709-month sentence.

As far as counsel is aware, there are twelve other people in the country who are in Mr. Coleman's situation: twelve people who received a sentence reduction under USSG § 1B1.13(b)(6), were released from custody, and who then faced the reinstatement of their original sentence. Ten of those individuals have cases on appeal in the Sixth or Eleventh Circuits,[24] while two others have had their cases remanded by the Seventh Circuit.[25] Both individuals proceeding in district court have filed requests for a second sentence reduction, and neither have returned to custody.[26]

---

[23] *Id.*

[24] In the Sixth Circuit, Patrick Smith's sentence reduction was appealed in cause no. 24-5674 and Jason Windham's sentence reduction was appealed in cause no. 24-6095. In the Eleventh Circuit, Jenny Elie's sentence reduction was appealed in cause no. 24-11813; Abel Rizo's sentence reduction was appealed in cause no. 24-11349; Rodney Taylor's sentence reduction was appealed in cause no. 24-11902; Cornel Adley's sentence reduction was appealed in cause no. 24-13798; Richard Daniel's sentence reduction was appealed in cause no. 24-13136; Dale Clar's sentence reduction was appealed in cause no. 25-11293; Damian Smith's sentence reduction was appealed in cause no. 25-12629; and Damon Garrett's sentence reduction was in cause no. 26-10991.

[25] *See United States v. Anthony Bailey*, No. 1:97-cr-00118, Doc. 185 (S.D. Ind. May 20, 2024), *appeal docketed* No. 24-2045, Doc. 1 (7th Cir. June 18, 2024), *remanded* No. 24-2045, Doc. 28 (7th Cir. July 29, 2026); *United States v. Jeffrey Louis Scott*, No. 3:04-cr-00014, Doc. 75 (S.D. Ind. June 13, 2024), *appeal docketed* No. 24-2220, Doc. 1 (7th Cir. July 17, 2024), *remanded* No. 24-2220, Doc. 29 (7th Cir. July 30, 2026).

[26] *See United States v. Anthony Bailey*, No. 1:97-cr-00118, Doc. 257 (S.D. Ind. Oct. 1, 2026); *United States v. Jeffrey Louis Scott*, No. 3:04-cr-00014, Doc. 91 (S.D. Ind. Oct. 1, 2026).

**C. Mr. Coleman has a meritorious legal claim for a second sentence reduction.**

This Court can reinstate Mr. Coleman's reduced, 336-month judgment. *Compare United States v. Brown*, No. 1:06-cr-00078, 2022 WL 23078913 (E.D. Tenn. May 19, 2022) (granting a sentence reduction request in a case where the defendant was sentenced to fifteen years in custody under the Armed Career Criminal Act, successfully petitioned for habeas relief, and was released from custody during the pendency of an ultimately successful government appeal); *United States v. Buie*, No. 1:05-cr-00664, 2020 WL 7490106 (S.D.N.Y. Dec. 21, 2020) (same); *United States v. Austin*, 468 F. Supp. 3d 641 (S.D.N.Y. 2020) (same).

Mr. Coleman intends to file a sentence reduction request citing *Brown*, *Buie*, and *Austin* as persuasive precedent. The similarities amongst these cases are striking: all four involved the "threatened loss of stability based on a jurisprudential anomaly," in combination with "striking rehabilitation[.]" *Brown*, 2022 WL 23078913, at *4.

Given this anticipated motion, there are "exceptional reasons" why Mr. Coleman's detention is not appropriate at this time. 18 U.S.C. § 3145(c). Exceptional reasons are those "clearly out of the ordinary, uncommon, or rare." *United States v. Little*, 485 F.3d 1210, 1211 (8th Cir. 2007). As Judge Webber noted in *United States v. Green*,

> The statute does not define the parameters of an "exceptional reason." While courts appear to agree that circumstances must be "out of the ordinary," "uncommon," or "rare," "[n]o opinion has even begun definitively to identify the factors a court must consider in deciding the exceptional reasons issue." In each case, "the determination of whether 'exceptional reasons' have been clearly shown is quintessentially a fact-intensive inquiry requiring a case by case analysis."

250 F. Supp. 2d 1145, 1149 (E.D. Mo. 2003) (internal citation omitted). After considering the legislative history, the language of the statute, and relevant case law, *Green* identified several factors which might establish exceptional circumstances, including:

> (1) whether detention imposes an unusually harsh effect of a personal nature not ordinarily experienced by an individual facing incarceration,
>
> (2) whether the defendant is incapacitated from or extremely unlikely to engage in recidivist behavior while released,
>
> (3) whether additional incarceration would result in an unjust extended period of detention because the defendant's uniquely low culpability is likely to reduce the sentence or a novel legal question for appeal exists, and
>
> (4) the extent and effect of the defendant's cooperation with the Government.

*Id.* at 1150. Of these four factors, three are relevant in Mr. Coleman's case.

First, detention would be "unusually harsh" for Mr. Coleman. *Id.* It would cost all that he has achieved over past 22 months: his job, his degree, and the relationships that he has rebuilt with his family. Second, Mr. Coleman is "extremely unlikely to engage in recidivist behavior while released." *Id*. He has had a spotless record for 25 years, including nearly 2 years in the St. Louis community; what's more, Mr. Coleman knows that even a minor infraction could destroy his chance at a sentence reduction. He has not only demonstrated an uncommon commitment to rehabilitation—he is uniquely incentivized, at this time, to remain violation-free. Third, "additional incarceration would result in an unjust extended period of detention" because Mr. Coleman has a meritorious argument for a sentence reduction. *Id*. This is what sets Mr. Coleman apart from most defendants who request a self-surrender date: Most people cannot claim that they have a viable path to relief. Mr. Coleman can.

## II. Kenneth Coleman is not a risk of flight.

The government filed a notice of appeal on September 5, 2024.[27] Since then, Mr. Coleman has known that he could face reincarceration. And yet, when he was released from prison on December 17, 2024, he did not flee.

---

[27] Doc. 442.

Mr. Coleman's future is in St. Louis. His family is here: his mother, his stepfather, his son. He wants to be here for them—and for his parents, in particular, who are aging and rely on Mr. Coleman to continue to live independently.[28] In addition, his career is here. Mr. Coleman's skills as a machinist are in high demand in the St. Louis area and, during his time on supervision, he has earned enough to make regular restitution payments, pursue a bachelor's degree, and take on the note for his parents' car.[29] The things that Mr. Coleman has achieved, that he is proud of, are here.

Mr. Coleman does not have ties to any other jurisdiction. He was born in St. Louis.[30] His mother was in the military, and he moved around as a child; however, he returned to the city at age 14 and lived in the city until his arrest in 2001.[31] In fact, the Eastern District of Missouri is the only place that Mr. Coleman has lived as a free man. He has no plans to leave now.

## III. Kenneth Coleman is not a danger to the community.

Mr. Coleman's crimes were very serious. However, they occurred over 25 years ago. Since then, Mr. Coleman has done everything in his power to prove that he has changed for the better. He had an exemplary record in the Bureau of Prisons; he has had an exemplary record on supervision. He is not a danger to the community or any other person.

## IV. The Court can place Mr. Coleman under additional conditions of supervision.

Since April of 2025, Mr. Coleman has been under the strict supervision of the United States Probation Office. He has done very well.

Now, however, the Court could choose to place Mr. Coleman under additional conditions.

---

[28] *See* Ex. 7 at 1 (Letter from Henry Willis) ("Kenneth has been a very good and respectful stepson helping with chores around the house cutting grass, cleaning snow from the driveway. He helps me with moving items around in our house. I am 74 years old and unable to do it alone.").
[29] Ex. 1 at 3-4.
[30] PSR at ¶ 96.
[31] *Id.*

Mr. Coleman's mother, Diane Willis, is willing to serve as a third-party custodian.[32] In addition, or in the alternative, Mr. Coleman could post an appearance bond. He is also willing to surrender his passport, comply with a curfew, or to undergo location monitoring, as the Court sees fit.

In short, Mr. Coleman is willing to do anything that he can to show the Court that he is not the same person that he was in 2002. As Judge White put it, he has "grown and changed, recognized and abandoned criminal thinking, and developed characteristics of responsibility, trustworthiness, maturity, honesty, reliability, credibility, morality, and empathy."[33]

## Conclusion

There is no reason to rush Mr. Coleman back to prison: his record over the past 25 years establishes that he is not a danger to the community or a flight risk, and his forthcoming motion for a sentence reduction is an exceptional circumstance. In this unique situation, immediate detention is not required by statute.

For these reasons, Mr. Coleman respectfully requests a self-report date no earlier than March 1, 2027 so that he can remain out of custody during the litigation of his second sentence reduction motion. In the alternative, he asks the Court to set a self-report date at any time it deems appropriate, after he has been designated to a Bureau of Prisons facility.

Mr. Coleman also asks the Court to set a briefing schedule for his anticipated motion. He respectfully suggests a deadline of December 1, 2026 for the motion itself; a deadline of December 31, 2026 for a government response; and a deadline of January 14, 2027 for any reply.

---

[32] Ex. 6 at 1 (Letter from Diane Willis) ("I am willing to do anything that the courts need me to do to support the courts and my son Kenneth. If that requires me to serve as a third party custodian then so be it. I agree to assume supervision of Kenneth and I will report any violations of the release conditions to the court.").

[33] Doc. 424 at 21.

Respectfully submitted,

/s/Nanci H. McCarthy
NANCI H. MCCARTHY, #45443MO
Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Nanci_McCarthy@fd.org

Attorney for Kenneth Coleman

/s/Alexandra K. Aparicio
ALEXANDRA K. APARICIO, #159111NM
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
Email: Alexandra_Aparicio@fd.org

Attorney for Kenneth Coleman

**CERTIFICATE OF SERVICE**

We hereby certify that on October 22, 2026 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Jason Dunkel, Assistant United States Attorney.

/s/Nanci H. McCarthy
NANCI H. MCCARTHY, #45443MO
Federal Public Defender

/s/Alexandra K. Aparicio
ALEXANDRA K. APARICIO, #159111NM
Assistant Federal Public Defender